**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEREMY ADKINS<br>251 Booth Road<br>Shickshinny, PA 18655<br><br>　　　　Plaintiff,<br>　v.<br><br>H&K GROUP, INC.<br>P.O. Box 196<br>Skippack, PA 19474<br><br>HAINES AND KIBBLEHOUSE, INC.<br>4747 Broad Street<br>Philadelphia, PA 19112<br>　　and<br>READING MATERIALS, INC.<br>528 Trojan Road<br>Hunlock Creek, PA 18621<br><br>　　　　Defendants. | CIVIL ACTION<br><br>No. _____<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**I. INTRODUCTION**

1. This action has been initiated by Jeremy Adkins (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101, *et. seq*.), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201, *et. seq*.), and the Pennsylvania Minimum Wage Act ("PMWA" – 43 P. S. §§ 333.101 *et. seq*.). The crux of Plaintiff's lawsuit is that he was, in violation of state and federal wage laws, not paid overtime compensation and then terminated from his employment due to his actual or perceived disabilities (among other impropriety, outlined *infra*). As a result, Plaintiff seeks damages as set forth herein.

## II. JURISDICTION AND VENUE

2.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA and ADA. There is supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims asserted herein as they arise out of the same common nucleus of operative facts as his federal claims.

3.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III. PARTIES

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual, with an address as set forth in the caption.

7.     H&K Group, Inc. (hereinafter "Defendant H&K" where referred to individually) is headquartered in Skippack, Pennsylvania and is a domestic, for-profit corporation organized under laws of the Commonwealth of Pennsylvania. The President and Chief Executive Officer of this entity is Scott B. Haines. Defendant H&K engages in many aspects of civil construction through various divisions of its business. Among others, John Kibblehouse, Jr. is also a corporate officer of Defendant H&K.

8. Haines & Kibblehouse, Inc. (hereinafter "Defendant H-Kibblehouse" where referred to individually) is a for-profit corporation organized under laws of the Commonwealth of Pennsylvania. Although legally filed as a separate entity, Defendant H-Kibblehouse operates as a mere division of Defendant H&K as the part of its business providing paving, highway construction, and other related construction services. This entity, just as with Defendant H&K, has the same corporate officer structure (with Scott Haines serving as President and John Kibblehouse an identified corporate officer).

9. Reading Materials, Inc., d/b/a Pikes Creek Site Contractors (hereinafter "Defendant RM" where referred to individually) is a for-profit corporation organized under las of the Commonwealth of Pennsylvania. Although legally filed as a separate entity, Defendant RM is the name of a particular physical location operating under the Defendant H-Kibblehouse division and under the guidance, operation, and direction of Defendant H&K as a whole. This entity, just as with Defendants H&K an H-Kibblehouse has the same corporate officer structure (with Scott Haines Serving as President and John Kibblehouse an identified corporate officer).[1]

10. Plaintiff physically worked at Defendants' location holding itself out as Pikes Creek Site Contractors, was paid through Defendant RM and H-Kibblehouse, and all management, human resources and benefit coordination was by and through Defendant H&K. Plaintiff's communications leading to his termination (discussed *infra*) were with Marcy Kirkpatrick who utilizes Defendant a H&K e-mail address, works from Defendant H&K's headquarters, and oversees benefits and medical leave for employees of all Defendants.[2]

---

[1] Defendants RM, H&K and H-Kibblehouse (a single enterprise) are hereinafter collectively referred to as "Defendants."

[2] Discriminatory comments were made to Plaintiff in conjunction with his termination indicating direct evidence of discrimination. And such comments and actions were undertaken by Stephen Nelson (the HR Director) for Defendant H&K overseeing all Defendants.

11. Defendants are unquestionably operated as single enterprise with all operations and management centralized through Defendant H&K with any other separate entities merely used for formality purposes, as they are just branches or divisions of Defendant H&K exclusively operated and managed by Defendant H&K. All Defendants are properly a single, joint and/or integrated employer of Plaintiff for the purposes of this lawsuit.

12. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV. FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was hired by Defendants effective on or about April 20, 2005.

15. Plaintiff is a 51-year-old man, who was employed at all relevant times herein as working foreman for Defendants.[3]

16. In total, Plaintiff was employed with Defendants for approximately 15.5 years until being terminated (as discussed at length *infra*).

### [1] **Plaintiff was paid illegally and in violation of state and federal wage laws while in the employ of Defendants.**

17. As permitted by applicable state and federal law(s), this lawsuit seeks a 3-year lookback for overtime violations.[4]

18. Defendants, companywide, pay their employees labeled "foremen" illegally.

---

[3] Plaintiff worked as a foreman for his last approximate 5 years of employment.

[4] Under the PMWA, there is an *automatic* 3-year lookback regardless of ill intent. Under the FLSA, there is a 3-year lookback for willful violations. Thus, a reviewing court must apply a 3-year lookback under state law from filing of this lawsuit. It is submitted that willfulness under federal law will further be evident.

19. Plaintiff was paid a set salary for all hours worked, ***regardless of*** whether he worked substantially more than 40 hours in a typical workweek. More specifically, Plaintiff was paid $1,420.00 gross per week (or an approximate salary of $73,840.00 per year).

20. Plaintiff generally averaged <u>at least</u> 60 hours (or more) of actual work and labor in a workweek during most workweeks during his period of employment as it wouldn't be uncommon for him to work 7-14 days straight without any days off from work (at 10-15 hour-work days).

21. Defendant is a construction company providing a wide variety of construction services. However, Plaintiff's role focused primarily within Defendants' paving division / branch.

22. Salary is not indicative of a potential exemption from overtime; but rather, an employee's "primary duties" dictate whether such employee must be paid overtime compensation. Plaintiff's primary duties included the following:

   (1) From in or about December to March of each season, actual paving operations were slower (constructive driven by season). Thus, Plaintiff physically worked in Defendants' shop. During this timeframe, Plaintiff:

   i.   Worked in a garage with 3 bays;

   ii.  Spent the winter physically upgrading, repairing, and maintaining Pavers for the coming year(s);

   iii. Continually performed manual repairs, jacked up or elevated Pavers, engaged in drilling, taking oil samples, replacing parts on Pavers, and other general repair; and

   iv.  Assisting with salting, shoveling, and snow removal during and following snow storms within Defendant's premises and other locations.

   (2) From in or about April to November of each season, Plaintiff was a general laborer although referred to as a "foreman." During this timeframe, Plaintiff:

   i. Would appear at locations where paving was taking place (but he was not a Paver Operator, nor did he drive such machinery);

   ii. Would spend approximately 30-60 minutes throughout the day recording the amount of time workers spent on specific tasks throughout the day; and

   iii. Would spend the rest of his typical workday raking, shoveling, measuring, spreading blacktop, and answering questions throughout the day from Defendants about the job status.

23. Throughout each full year, 99% of Plaintiff's job and "primary duties" was literally making physical repairs, performing manual labor, and working alongside other construction members. The term "foreman" was generally attributed to Plaintiff as a point of contact for Defendants, *as opposed to* indicate he was in any manner a high-level of management. In fact, Plaintiff was directly supervised by a Superintendent who made any meaningful decisions.

24. Plaintiff **DID NOT**:

  (1) Have any type of designated office space in any workplace or facility and merely filled out any paperwork <u>in a truck</u> when time permitted (as he did not perform any typical white-collar duties);

  (2) Have any authority to hire or terminate employees, as any such decisions were made by actual management (nor did he engage in any such activities);

  (3) Have any authority to evaluate or give additional compensation to any employees, as any such decisions were made by actual management (nor did he engage in an such activities); or

  (4) Have any participation in management policy making or management business meetings, as Plaintiff was merely a laborer and worker (not someone who was considered for input from a corporate or management perspective).

25. Plaintiff's "primary duties" were labor, not management. This is simply indefensible.

26. State and federal laws do exempt employees who meet the "**executive**" exemption from overtime entitlements. To meet such a high-level exemption, the employee must be: (a) paid qualifying salary; **and** (b) perform "primary duties" that are executive management in nature. *See* 29 C.F.R. 541.100. More specifically, "an exempt 'executive' is any employee:"

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
>
> *(2) Whose <u>primary duty</u> <u>is management</u> of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;*
>
> *(3) Who <u>customarily and regularly</u> directs the work of two or more other employees; and*
>
> *(4) Who <u>has the authority to hire or fire other employees</u> . . .*
>
> *See Hickton v. Enter. Rent-A-Car Co.* (*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*), 2012 U.S. Dist. LEXIS 101095, at *66 (W.D. Pa. 2012), citing, 29 C.F.R. § 541.100(a). (Emphasis added).

27. While Plaintiff was paid a qualifying salary (an easy threshold), he <u>never</u> performed "primary duties" of executive management. Although at times referred to at times as a "foreman" Plaintiff **did not**:

> (A) Hire anyone;
>
> (B) Discpline anyone;
>
> (C) Evaluate anyone;
>
> (D) Terminate anyone;
>
> (E) Give pay increases or compensation;
>
> (F) Create, draft, or prepare company policies; or
>
> (G) Approve or disapprove of requested vacation, PTO, or any other time off.

7

28.     The undeniable reality is Defendants called Plaintiff a "foreman" and paid him a salary to knowingly exploit him because unfortunately the majority of blue-collar workers (and laborers) have the common misunderstanding or misperception that if they are paid a salary, they must not be entitled to overtime pay.

29.     The primary duties of Plaintiff's job entailed him providing manual labor.[5]

30.     Referring to Plaintiff as a "foreman" was an intentional, knowing, and fraudulent attempt on the part of Defendants to evade state and federal overtime obligations. Plaintiff's "job title" lacks any relevance whatsoever under applicable law(s).[6]

31.     As a matter of fact and law, Defendants are unable to set forth any contrary facts that Plaintiff could plausibly be construed to meet an "executive exemption" under state or federal laws.[7]

---

[5] *See e.g. Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1269 (11th Cir. 2008)(affirming $35,000,000 verdict against the defendant because a class of store managers performed primary duties of non-management including stocking, cashier work, etc…); *Hickton v. Enter. Rent-A-Car Co.* (*In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig*.), 2012 U.S. Dist. LEXIS 136252 (W.D. Pa. 2012)(denying summary judgment and explaining a jury could readily conclude employee titled "manager" who performed mostly sales and other labor had "primary duties" other than management); *Marshall v. Coastal Group Management*, 1980 U.S. Dist. LEXIS 11704 (D.N.J. 1980)(reaffirming the denial of summary judgment as to managers explaining they spent most of their time prepping food, cooking, handling customers, working the cash register and cleaning finding assertions of the "executive exemption" to be "untenable").

[6] *See* 29 C.F.R. § 541.2 Job titles insufficient: "**A job title alone is insufficient to establish the exempt status** of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary **and duties meet the requirements of the regulations in this part**." (Emphasis added). *See also Marshall v. Nat'l Freight, Inc*., 1979 WL 1977, at *10 (D.N.J. 1979)(explaining that although accounts payable supervisor had a complex and laborious job, he was non-exempt because the majority percentages of his daily duties involved processing transactions and document review pursuant to company guidelines); *Shultz v. A.E. Burgess Co*., 1970 WL 668, at *4 (N.D. Ala. 1970)(field office manager was non-exempt under FLSA because the majority of his time was spent on non-exempt duties); *Roberts v. Nat'l Autotech, Inc*., 192 F. Supp. 2d 672, 675 (N.D. Tex. 2002)(granting summary judgment to the plaintiff, a store manager, because the majority if his time was spent doing non-exempt types of job duties making the managerial or administrative exemptions inapplicable under the FLSA); *Oliva v. Infinite Energy Inc*., 2012 WL 11868265, at *8-9 (N.D. Fla. 2012)(granting summary judgment to delinquent account overseers because the majority of their job was calling upon debtors and collecting documents which are non-exempt duties, making that their "primary duty").

[7] The FLSA exempts from its overtime provisions "any 'employee in a **bona fide** executive . . . capacity.'" *Soehnle v. Hess Corp.,* 399 F. App'x 749, 750 n.1 (3d Cir. 2010)(quoting 29 U.S.C. § 213(a)(1)). In light of the broad remedial

32. It is nationally recognized that <u>even if</u> Plaintiff were truly a ***working*** foreman performing ***some*** supervisory responsibility, a "working foreman" still must be paid overtime compensation. *See e.g. Kinder v. Pepsi-Cola Bottling Co. of Salina*, 1996 Kan. App. Unpub. LEXIS 371, at *2 (Ct. App. 1996)(Affirming judgment of employee under FLSA and explaining a "working foreman" who performs primarily labor is non-exempt); *Peperissa v. Coren-Indik*, Inc., 298 F. Supp. 34, 39 (E.D. Pa. 1969)(granting judgment in favor of employee under the FLSA because although labeled a "foreman," he was actually a "working foreman" performing primarily labor even if some of his duties were supervisory); *Vega v. Us Hosp. Servs.*, 2006 U.S. Dist. LEXIS 107992, at *19 (M.D. Fla. 2006)(granting judgment to employee under the FLSA, as more than 50% of the employee's primary duties as foreman were labor not supervisory); *Glorioso v. Roy Williams*, 1992 U.S. Dist. LEXIS 23231, at *18 (E.D. Wis. 1992)(granting directed verdict to employee under FLSA as it was obvious he was a working foreman and the vast amount of his duties were labor intensive, as opposed to minimal supervision responsibilities); *West v. Anne Arundel Cty.,* 1995 U.S. Dist. LEXIS 15679, at *47 (D. Md. 1995)(granting summary judgment to working foreman who performed timekeeping but worked along side subordinate employees, as his primary duties were non-management).

33. Had Plaintiff been paid overtime compensation, his overtime rate would have been $53.25 per hour. The look-back period of 3 years renders this lawsuit lookback period to April of 2018. During this look-back period, Plaintiff:

(1) Worked 36 recoverable weeks in 2018;

---

purpose of the FLSA, exemptions are narrowly construed against the employer. *Madison v. Resources for Human Dev., Inc*., 233 F.3d 175, 183 (3d Cir. 2000). Plaintiff could not qualify as an executive under any national jurisprudence interpreting the FLSA, particularly in light of such exemptions being so narrowly construed against employers.

9

    (2) Worked 52 recoverable weeks in 2019; and

    (3) Worked 15 recoverable weeks in 2020.[8]

34.    Plaintiff worked approximately 103 weeks in his compensable 3-year lookback period. Thus, Plaintiff worked approximately 2,060 (or more hours of unpaid overtime at a "conservative" average of 20 hours per week of overtime). Plaintiff is owed approximately $110,000.00 (or more) in unpaid overtime compensation.[9]

35.    Defendants' failure to properly track Plaintiff's hours violated state and federal wage laws.[10] And Plaintiff is *automatically* entitled to liquidated (or double) damages for Defendants' actions as outlined in this Complaint.[11] Such damages are in addition to mandatory

---

[8] Although Plaintiff was employed from January through November of 2020 (when terminated), Plaintiff was laid off in late March 2020 temporarily and then was only able to return from the layoff for approximately 1 month prior to his medical leave. Thus, Plaintiff only worked 15 compensable weeks during said timeframe.

[9] This is a very conservative estimate, as it is premised upon a 60-hour workweek. In reality, Plaintiff at times worked over 70 hours in various workweeks.

[10] The failure of an employer to abide by mandatory record-keeping of hours worked by an employee violates 29 U.S.C. § 211(c). As a result, an employer's estimates of hours typically worked may be accepted as an employee should not be prejudiced by an employer's failure to follow legal obligations. *See e.g. Zeng Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at *8 (S.D.N.Y. 2004).

[11] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

legal fees and other applicable damages under state and federal law(s). *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

### [2] **Plaintiff was terminated unlawfully by Defendants.**

36. On or about April 6, 2020, Plaintiff suffered a stroke and numerous related complications.

37. Plaintiff resumed working for Defendants in or about mid-May of 2020 for about a month, until in or about mid-June of 2020.[12] Plaintiff took a medical leave of absence from in or about mid-June of 2020 through early November of 2020. This was due to stroke and other health problems.

38. Plaintiff was assured his job would remain open by Defendants' management, and Plaintiff was encouraged to get better from the summer through fall of 2020. The management referred to in Section 2 of Plaintiff's Complaint herein refers generally to Stephen Nelson (Vice President and HR Director), Marcy Kirkpatrick (Coordinator), and Dan Cox (a Supervisor).[13]

39. Plaintiff attempted to return to work in early November of 2020. Defendants refused to let Plaintiff return to work claiming they could not provide Plaintiff with accommodations such as lesser work hours (although Plaintiff's request(s) were temporary and reasonable). Plaintiff was however *again assured* he could commence working when able to work without medical restrictions by Defendants' management.

40. Defendants' management confirmed Plaintiff could resume working in mid-December of 2020, as Plaintiff provided new medical information showing he only needed a

---

[12] Plaintiff did not initially use a medical leave upon suffering the stroke, as Defendants' operations were temporarily closed due to the COVID-19 pandemic.

[13] Section 2 of this Complaint refers to paragraphs 36-47.

11

maximum-hour, per-day limitation *for 1 month* and then was permitted to resume working without any medical restrictions. Specifically, Plaintiff's return to work note stated:

> [Plaintiff] has current been under our care. From our standpoint, he may return to work on 12/21/2020 starting at an 8-hour work day for 1 month with a 50 lb weight restriction. Following this month, he may then return to his regular schedule without any restrictions on hours per day as well as a weight restriction.
>
> *See* Penn State Hersey Medical Center Medical Clearance.

41. It was initially expected and planned that Plaintiff would resume working per his above-referenced medical clearance by Defendants.

42. In conjunction with Plaintiff's discussions about returning to work, Plaintiff discussed the status of his health problems, his treatment, and that he was being approved for a medical marijuana card. Plaintiff merely wanted to be completely transparent with Defendants.

43. Defendants' management referred to Plaintiff as a "liability," and informed him numerous times in December of 2020 that in order for him to be allowed to resume work, he needs to "provide a letter that [he is] no longer using marijuana to treat [for his] health issue." This was both verbal and in writing.

44. Plaintiff expressed concerns of discriminatory treatment to Defendants' management, questioned why they would dictate his medical regimen, and was then suddenly told Plaintiff - - it doesn't matter because he is instead being laid off.

45. Following Plaintiff's expected return to work on December 21, 2020, Plaintiff was never permitted to resume working, was terminated, and never called back for work (despite being initially told his layoff may only be temporary).

46. Plaintiff was assured his job was being held open, coordinated to return to work, expected to return to work – and then solely because he discussed his health issues and expressed concerns of discrimination – he was abruptly "laid off."

47. Defendant has continued to hire employees, to permit all other laborers to work, and Plaintiff was <u>the only</u> foreman of Defendants allegedly affected by a pretextual layoff.

48. Plaintiff was discriminated against, retaliated against, and not medical accommodated. Defendants' unlawful termination of Plaintiff was willful, intentional, and outrageous.

### Count I
### Violations of the Fair Labor Standards Act ("FLSA")
(Failure to Pay Overtime Compensation)
- Against All Defendants -

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Plaintiff was not properly paid for all owed overtime as explained *supra*. And such actions constitute violations of the Fair Labor Standards Act ("FLSA").

### Count II
### Violations of the Pennsylvania Minimum Wage Act ("PMWA")
(Failure to Pay Overtime Compensation)
- Against All Defendants -

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff was not properly paid for all owed overtime as explained *supra*. And such actions constitute violations of the PMWA.

## Count III
### Violations of the Americans with Disabilities Act ("ADA")
(Discrimination, Retaliation & Failure to Accommodate)
- Against All Defendants -

53. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

54. Plaintiff was not reinstated, terminated, and refused continuing work because of:

(1) His actual and known health problems;

(2) His perceived and record-of impairments;

(3) His requested accommodations; and

(4) His concerns of discriminatory treatment.

55. These actions above constitute both discrimination and retaliation in violation of the ADA. Moreover, Plaintiff was not medically accommodated by being permitted to resume working from November of 2020 through his termination from employment, also violations of the ADA.

56. Plaintiff properly exhausted all administrative remedies to proceed for violations of the ADA by timely filing a Charge with the EEOC and by filing the instant lawsuit within 90 days of receipt of a right-to-sue letter and/or notice of dismissal.

## Count IV
### Violations of the Family and Medical Leave Act ("FMLA")
(Retaliation)
- Against All Defendants -

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff's job position was available in November and December of 2020. And Plaintiff had taken an FMLA-qualifying medical leave of absence predating his anticipated return to work in late 2020.

59. Upon attempting to return to work in November and December of 2021, Plaintiff was shortly thereafter pretextually lied to that he was "laid off" despite that: (a) his job was actually available; (b) Defendants continued to hire; (c) other less senior or skilled foreman were retained; and (d) Plaintiff was solely not brought back to due to his prior protected leave of absence.

60. Defendants' actions as aforesaid constitute FMLA retaliation.[14]

## Count V
## Violations of Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101, et seq
## - Against All Defendants -

61. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

62. There exists direct evidence (verbally and in writing) that Plaintiff was terminated expressly due to his medical marijuana prescription.

63. Plaintiff's termination for such a rationale by Defendant thus conclusively violated the MMA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting overtime and wage violations;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for

---

[14] Plaintiff does not allege herein FMLA interference claims.

Defendants' wrongful actions, including but not limited to all owed wages, overtime, past and future lost earnings, benefits, pension or other employee perks, and other applicable compensation;

      C.      Plaintiff is to be awarded actual damages to which he is equitably or legally entitled beyond those already specified herein;

      D.      Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable laws;

      E.      Plaintiff is to be accorded other equitable relief as the Court deems just, proper, and appropriate;

      F.      Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

      G.      Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

_____
Ari R. Karpf, Esquire
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: April 21, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Jeremy Adkins | : | CIVIL ACTION |
| v. | : | |
| H&K Group, Inc., et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| 4/21/2021 | _[signature]_ | | Plaintiff |
|---|---|---|---|
| **Date** | **Attorney-at-law** | | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 251 Booth Road, Shickshinny, PA 18655

Address of Defendant: PO Box 196, Skippack, PA 19474; 4747 Broad Street, Philadelphia, PA 19112; 528 Trojan Road, Hunlock Creek, PA 18621

Place of Accident, Incident or Transaction: Defendants place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes [ ] No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes [ ] No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes [ ] No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes [ ] No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 4/21/2021    _____(signature)_____    ARK2484 / 91538
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** *(Place a √ in one category only)*

A. *Federal Question Cases:*
- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [X] 6. Labor-Management Relations
- [ ] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
  *(Please specify): _____*

B. *Diversity Jurisdiction Cases:*
- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify): _____*
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
  *(Please specify): _____*

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 4/21/2021    _____(signature)_____    ARK2484 / 91538
                  *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
ADKINS, JEREMY

**DEFENDANTS**
H&K GROUP, INC., ET AL.

**(b)** County of Residence of First Listed Plaintiff: Luzerne
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*   Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FLSA (29USC201); ADA (42USC12101); FMLA (29USC2601)
Brief description of cause:
Violations of the FLSA, PA Minimum Wage Act, ADA, FMLA and the PA Medical Marijuana Act

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*:
JUDGE _____   DOCKET NUMBER _____

DATE: 4/21/2021
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

Print   Save As...   Reset